UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C20-6176-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income.[1] Plaintiff contends the administrative law judge ("ALJ") erred in discounting his testimony and certain medical opinions. (Dkt. # 26 at 1.) Plaintiff also argues that the Commissioner's authority to adjudicate Plaintiff's application is constitutionally defective and that this defect should be remedied by a remand. (*Id.*) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

---

[1] Plaintiff also filed a motion for extension of time to file a reply brief (dkt. # 36), which the Court hereby GRANTS.

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1965, has a high school diploma and additional training in appliance repair, and has worked as a car wash cleaner, pizza delivery driver, treatment center maintenance janitor, and auto parts store salesman. AR at 456, 476, 618. Plaintiff was last gainfully employed in December 2018. *Id.* at 618.

In September 2018, Plaintiff applied for benefits, alleging disability as of July 27, 2012.[2] AR at 428-33. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 359-62, 366-72. After the ALJ conducted a hearing in February 2020 (*id*. at 223-55), the ALJ issued a decision in March 2020 finding Plaintiff not disabled. *Id.* at 40-54. As the Appeals Council denied Plaintiff's request for review in October 2020, the ALJ's decision is the Commissioner's final decision. *Id*. at 1-7. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[2] Plaintiff amended his alleged onset date to September 14, 2018. AR at 228.

ORDER - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   The ALJ Did Not Err in Discounting Plaintiff's Testimony

The ALJ summarized Plaintiff's subjective testimony and explained that he discounted it because (1) Plaintiff's allegations were inconsistent with the objective medical evidence; (2) Plaintiff received minimal and/or conservative treatment for his symptoms; (3) Plaintiff made inconsistent statements about his symptoms; and (4) Plaintiff's activities are inconsistent with his allegations and he made inconsistent statements about his ability to engage in those activities. AR at 46-50. In the Ninth Circuit, an ALJ must provide clear and convincing reasons to discount a claimant's testimony, in the absence of evidence of malingering. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff assigns error to the ALJ's assessment of his testimony, but fails to challenge the specific reasons provided by the ALJ. (*See* dkt. # 26 at 15-16.) He contends that his back pain was established in the medical record, but this does not relate to an error in the ALJ's findings, as the ALJ acknowledged Plaintiff's back conditions at step two, and then summarized the treatment records related to Plaintiff's back conditions. *See* AR at 42-43, 47-48. Plaintiff goes on to contend that his activities were consistent with the ability to perform sedentary work, but

ORDER - 3

again, this does not show error in the ALJ's decision because the ALJ identified specific inconsistencies between Plaintiff's activities (most notably, working) and his allegations, as well as Plaintiff's inconsistent reporting as to his work activity. *See id.* at 49. Plaintiff has not shown that the ALJ erred in discounting Plaintiff's allegations based on inconsistency with his activities. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

Lastly, Plaintiff argues that the ALJ failed to address his sleep disturbances and insomnia, which he alleges leave him fatigued and without ambition for two days every other week. (Dkt. # 26 at 16.) Indeed, Plaintiff testified at the hearing that his depression resulted in those sleep-related limitations (AR at 244-46), and the ALJ addressed why he found Plaintiff's depression to be less severe than alleged. *See id.* at 47-49 (discussing Plaintiff's failure to follow through with treatment for his mental conditions and some normal mental examination findings). The ALJ adequately addressed why he found Plaintiff's depression to be less severe than alleged, and Plaintiff has not specifically addressed the reasons the ALJ provided or showed that they were erroneous.

Because Plaintiff has failed to show that the ALJ's assessment of his testimony is erroneous, the Court affirms this portion of the ALJ's decision.

  **B.**  **The ALJ Did Not Harmfully Err in Assessing Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in assessing opinions written by examining psychologist Kimberly Wheeler, Ph.D., and examining nurse Joe Kohn, ARNP. The Court will address each disputed opinion in turn.

ORDER - 4

*1.     Legal Standards*

The regulations effective March 27, 2017, 20 C.F.R. §§ 404.1520c(c), 416.920c(c), require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See, e.g.*, *Kathleen G. v. Comm'r of Social Sec.*, No. C20-461 RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5852 (January 18, 2017) ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision … [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us.").

*2.     The ALJ Did Not Harmfully Err in Assessing Dr. Wheeler's Opinion*

Dr. Wheeler examined Plaintiff in January 2019 and completed a DSHS form opinion describing disabling limitations in Plaintiff's ability to perform activities within a schedule,

1 maintain regular attendance and punctuality, and complete a normal workday and workweek. AR
2 at 762-66. The ALJ found Dr. Wheeler's opinion to be unpersuasive because it was inconsistent
3 with (1) Plaintiff's reports to Dr. Wheeler, including his ability to work (until he quit due to
4 physical symptoms); (2) the normal findings in the treatment record, Dr. Wheeler's own normal
5 mental status examination, and Plaintiff's demonstrated ability to keep medical appointments
6 (except during the time that he was helping his girlfriend prepare for surgery); and (3) Plaintiff's
7 failure to follow through with counseling. *Id*. at 51. The ALJ also noted that some of the
8 symptoms described by Dr. Wheeler could be attributed to Plaintiff's attention deficit
9 hyperactivity disorder ("ADHD"), "as later records seem to indicate," but the record also shows
10 that these symptoms improved when Plaintiff began taking medication. *Id*.

11     Plaintiff argues that in finding that Dr. Wheeler's opinion was unsupported by objective
12 clinical findings, the ALJ overlooked Plaintiff's presentation during the examination, where his
13 affect was blunt, he rambled from topic to topic, reported various depression symptoms, and
14 appeared to feel overwhelmed. (Dkt. # 35 at 9.) Plaintiff has not pointed to objective clinical
15 findings that could support Dr. Wheeler's opined disabling limitations, however. Plaintiff's own
16 self-reports do not constitute objective evidence, and Plaintiff has not shown that the ALJ erred
17 in focusing on whether Dr. Wheeler's conclusions were supported by or consistent with the
18 objective findings as well as the objective findings in other parts of the record. *See* AR at 51
19 (ALJ's reference to Dr. Wheeler's mental status examination, normal psychiatric findings found
20 in medical treatment notes, and evidence of improvement with medication).

21     Plaintiff goes on to defend Dr. Wheeler's reliance on his self-reporting as appropriate in
22 the context of a psychiatric examination (dkt. # 26 at 11), but the ALJ did not discount Dr.
23

ORDER - 6

Wheeler's opinion on this basis and Plaintiff's argument thus fails to establish error in the ALJ's decision.

Next, Plaintiff argues that although the ALJ found that his ADHD improved with medication, Dr. Wheeler did not herself attribute any of Plaintiff's symptoms to ADHD. (Dkt. # 26 at 12.) The ALJ did not suggest that Dr. Wheeler diagnosed ADHD, however: the ALJ noted that "later records" referenced Plaintiff's ADHD and the concentration problems that Dr. Wheeler mentioned, and that those records also showed improvement in Plaintiff's ability to concentrate and complete tasks with medication. AR at 51 (citing *id*. at 859, 873, 876, 879, 881-82, 886, 888). Plaintiff has not shown that the ALJ erred in considering the improvement of Plaintiff's concentration deficits (which had been documented by Dr. Wheeler) with medication, when assessing Dr. Wheeler's opinion.

Plaintiff also references a statement he provided to the Appeals Council after reading the ALJ's decision that purports to address some of the ALJ's findings (dkt. # 26 at 12): he acknowledges that he did work at a car wash in 2018, but claims that it was for only very minimal, sporadic hours. AR at 536. Plaintiff's self-serving statement creates at most an alternative interpretation of the record, but contradicts his own hearing testimony denying all paid work since 2010 (*id*. at 232, 233) and his agency paperwork where he failed to disclose this work in any capacity (*id*. at 475, 492). The ALJ's findings are consistent with Plaintiff's own contemporaneous description of his work to Dr. Wheeler (*id*. at 762-63), which suggests more substantial work than described in Plaintiff's post-decision statement, and Plaintiff has not shown that the ALJ's interpretation of the record before him is erroneous or otherwise unsupported by substantial evidence. Even if, as Plaintiff contends (dkt. # 26 at 12), the ALJ erred in finding his pre-onset work to be inconsistent with Dr. Wheeler's opinion because her

ORDER - 7

opinion did not address that period of time, the ALJ reasonably found that Plaintiff's ability to work during the adjudicated period, up until a month before Dr. Wheeler's opinion, undermined the disabling limitations she described. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

Lastly, Plaintiff disputes that he had poor attendance at mental health therapy appointments, but does not point to any ongoing therapy treatment notes during the adjudicated period. Instead, he points to treatment notes predating the adjudicated period, as well as one intake appointment during the period after which Plaintiff failed to return for treatment. (Dkt. # 26 at 12 (citing AR at 537-68, 720-35).) These treatment notes do not show that the ALJ erred by finding that Plaintiff had failed to follow through with therapy during the adjudicated period, or that the ALJ erred in finding that his failure to follow through undermined Dr. Wheeler's opinion suggesting that his mental symptoms were disabling. *See, e.g.*, *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. Jan. 7, 2019) (affirming an ALJ's rejection of a treating physician's opinion in part because plaintiff "received only sporadic treatment for his condition").

Because Plaintiff has not shown that the ALJ erred in assessing Dr. Wheeler's opinion, the Court affirms this portion of the ALJ's decision.

        3.     *The ALJ Did Not Harmfully Err in Assessing Mr. Kohn's Opinion*

Mr. Kohn completed a DSHS form opinion describing Plaintiff's physical symptoms and limitations, indicating that Plaintiff was limited to performing sedentary work. AR at 635-37. The ALJ found Mr. Kohn's opinion to be inconsistent with the minimal examination findings Mr. Kohn indicated, as well as the other "largely normal" physical examination findings in the record. *Id.* at 51-52. The ALJ also found Mr. Kohn's opinion to be inconsistent with Plaintiff's

bicycling activity and ability to complete household maintenance, because both of those activities suggest greater manipulative ability than described by Mr. Kohn. *Id*. at 52. The ALJ found that Mr. Kohn's opinion appeared to be based more on subjective reporting than the objective evidence, and that Plaintiff's self-reporting was not entirely reliable. *Id*.

Plaintiff points to various imaging reports that he contends corroborate the existence of various physical conditions (dkt. # 26 at 13-14; dkt. # 35 at 11 (citing AR at 707-08, 739, 799-800, 804, 825)), but this evidence does not undermine the ALJ's decision: the ALJ acknowledged that Plaintiff had the conditions referenced in this evidence. *See* AR at 42. The ALJ did not cite evidence undermining the existence of the conditions Mr. Kohn identified, but instead cited normal functional findings as inconsistent with the functional limitations identified by Mr. Kohn. *See id*. at 52 (citing *id*. at 652-53, 689, 695-96, 701-02, 856, 863-64, 881, 888, 895, 900-01, 907-08, 915, 945). Plaintiff has not shown that the ALJ erred in contrasting these examination findings with Mr. Kohn's opinion, or in discounting the opinion on this basis. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

Furthermore, the ALJ also cited Plaintiff's activities as inconsistent with Mr. Kohn's opinion, and Plaintiff has not addressed this line of reasoning or shown that it is erroneous. The Court finds that this is another proper basis on which the ALJ discounted Mr. Kohn's opinion. *See Rollins*, 261 F.3d at 856.

Because Plaintiff has failed to show that the ALJ erred in assessing Mr. Kohn's opinion, the Court affirms this portion of the ALJ's decision.

//

//

**C.  The Procedure for Removal of the Commissioner of Social Security is Unconstitutional but Does Not Invalidate the ALJ's Decision**

Plaintiff contends this case must be remanded because the structure for removing the Commissioner of Social Security violated separation of powers under Article II of the U.S. Constitution, such that the Social Security Administration's ("SSA") decision to deny him benefits was made by individuals who had not properly been delegated authority to make such decisions.[3]

In his complaint, Plaintiff did not include any claim based on a constitutional violation.[4] (*See* dkt. # 4.) Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not provide "detailed factual allegations," but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead enough facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Consequently, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 555 n.3.

---

[3] The ALJ who decided Plaintiff's case was appointed by then-Acting Commissioner Nancy Berryhill. *See* SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019). Defendant contends Ms. Berryhill, as Acting Commissioner, was not subject to the same removal provision as Commissioner Saul. The Court need not reach this issue because, as explained below, Plaintiff cannot establish the removal provision at issue here — and the one to which Commissioner Saul *was* subject — caused him harm.

[4] The Court recognizes this case was filed utilizing the Court's "Pilot Program for Electronic Service in Social Security Cases," which applies only to actions against the Commissioner in which "the only claim that is being brought is pursuant to 42 U.S.C. § 405(g)." Amended General Order 04-15 at 2. An action alleging any claim other than a § 405(g) claim must be filed through a different avenue. *Id.* ("In particular, the Pilot Program does not apply to (a) complaints that include claims against the Commissioner in addition to, or other than, those brought pursuant to 42 U.S.C. § 405(g)[.]"). Whether filed under a § 405(g) claim or on its own, Plaintiff was not foreclosed from asserting his constitutional claim in his complaint.

ORDER - 10

In the absence of any notice of a claim or any supporting facts pleaded in the complaint, raising the claim in briefing is insufficient to present the claim to the Court. *Cf. Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (Ninth Circuit "precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."); *see also Pac. Coast Fed'n of Fishermen's Associations v. Glaser*, 945 F.3d 1076, 1086-87 (9th Cir. 2019). Plaintiff contends he "does not forfeit constitutional challenges by not raising them at the agency level." (Dkt. # 26 at 8.) The issue, however, is not that he failed to raise the issue before the agency, but that he failed to state a claim in his complaint before this Court. Briefing on Plaintiff's agency appeal, like briefing on a summary judgment motion, "is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

Nevertheless, even if the Court were to consider Plaintiff's unpled constitutional claim, the Court concludes it would not require remand. For the reasons explained herein, the Court agrees with Plaintiff that the Commissioner enjoyed unconstitutional tenure protection but finds that the unconstitutional provision did not deprive the Commissioner of the authority to issue a decision on Plaintiff's claim and that Plaintiff has not alleged any compensable harm that requires reversal of the ALJ's decision denying benefits.

      1.  *The Commissioner's Tenure Protection is Unconstitutional*

Removal of the Commissioner of Social Security is governed by 41 U.S.C. § 902(a)(3). Plaintiff argues two recent Supreme Court decisions — *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021) — mandate a finding that the removal clause in section 902 violates the Constitution's separation of

ORDER - 11

powers.[5] In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Seila Law*, 140 S. Ct. at 2197.

The Supreme Court addressed a removal provision again the following year in *Collins*. There, the Court held a provision limiting the President to removing the director of the Federal Housing Finance Agency ("FHFA") only for cause violated the separation of powers. *Collins*, 141 S. Ct. at 1783 (holding that "*Seila Law* is all but dispositive").

Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for removal of the Commissioner of Social Security, 41 U.S.C. § 902(a)(3), violates separation of powers. The Commissioner, a single officer at the head of an administrative agency, is removable only for cause. *See* 41 U.S.C. § 902(a)(3). This statutory clause suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*, and thus violates separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).

    2. *The Constitutional Violation Did Not Deprive the Commissioner of the Authority to Resolve Plaintiff's Claim*

Plaintiff contends the remedy for the unconstitutionality of the removal provision in § 902(a)(3) is reversal and remand. Plaintiff contends the Commissioner's appointment and tenure were unconstitutional because of the removal provision, depriving the Commissioner of

---

[5] The Commissioner "agree[s] that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (Dkt. # 31 at 2.)

ORDER - 12

the ability to delegate decision-making to the ALJ and Appeals Council who considered Plaintiff's case. Plaintiff's argument fails.

First, the removal provision is severable. In *Seila Law*, the Court found the constitutionally defective removal procedure was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the offending removal restriction was erased. 140 S. Ct. at 2209, 2245.[6] Similarly, if the removal clause in § 902(a)(3) is stricken, the SSA remains fully functional.

Second, the removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.").

### 3. Plaintiff Cannot Link Any Harm to the Commissioner's Unconstitutional Tenure Protection

Third, Plaintiff has not made any clear allegation that the removal clause in § 902(a)(3) inflicted compensable harm.[7] In *Collins*, the Court found it was "possible for an unconstitutional

---

[6] Four Justices dissented from Chief Justice Roberts's lead opinion holding the CFPB removal provision was unconstitutional, but agreed that "*if* the agency's removal provision is unconstitutional, it should be severed." *Id.* at 2245 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part).

[7] Plaintiff argues he need only show that a decision in his favor could lead to at least some relief, citing *Tafoya v. Kijakazi*, -- F.Supp.3d --, 2021 WL 3269640 (D. Colo. July 29, 2021). (Dkt. # 35 at 6.) But *Tafoya* only addressed a plaintiff's standing to bring a claim, which requires far less of a showing than establishing harm from an unconstitutional provision. *See Collins*, 141 S.Ct at 1779, 1789 (finding standing but remanding to lower courts to determine whether the unconstitutional removal provision inflicted compensable harm). Here, the Commissioner has not challenged Plaintiff's standing to bring a separation of powers claim.

ORDER - 13

provision to inflict compensable harm," and remanded to the lower court to determine whether the removal provision "inflicted harm." 141 S. Ct. at 1788–89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Id.* at 1774. The Third Amendment was not subject to full judicial review, *id*. at 1775-76, 1785, and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *See id.* at 1789.

By contrast, in this case the action challenged by Plaintiff is the ALJ's decision denying benefits. Plaintiff has alleged no direct action by former Commissioner Saul himself, and no involvement—or even awareness—by the former President in the ALJ's decision. *Cf.* 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Plaintiff has made no clear allegation that Commissioner Saul's unconstitutional tenure resulted in compensable harm to him. The ALJ's decision here was based upon an uncontested factual record and the application of established law, including caselaw, which generally cannot be changed by the Commissioner.

Nor does Plaintiff's reference to an unnamed White House official's justification for Commissioner Saul's removal indicate that Plaintiff was harmed. (*See* Dkt. ## 26 at 7, 35 at 2.) To the extent Plaintiff generally suggests that Commissioner Saul deprived him of due process

ORDER - 14

(*id*.), there is no support for this claim. *Cf. Hoye v. Sullivan,* 985 F.2d 990, 992 (9th Cir. 1992) ("The mere allegation of a substantive due process violation is not sufficient to raise a 'colorable' constitutional claim to provide subject matter jurisdiction."). Although a representative of the President suggested that Commissioner Saul was removed from office in part because he had undermined, politicized, and "reduced due process protections for benefits appeals hearings," this statement does not establish the existence of a due process violation and Plaintiff has failed to identify one. *See* https://www.cnn.com/2021/07/09/politics/social-security-commissioner-fired-by-biden/index.html (last visited Nov. 4, 2021). Furthermore, even assuming Commissioner Saul attempted to undermine, politicize, or reduce the process available to a claimant, it is the courts — rather than the Commissioner, the President, or White House officials — that determine whether a claimant received the process due.

Plaintiff has not alleged any connection between the unconstitutional limit on Commissioner Saul's removal and the ALJ's decision denying him benefits. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Thus, while the removal clause in § 902(a)(3) violates separation of powers, it does not independently require the Court to reverse the ALJ's decision absent a showing of compensable harm.

## V.    CONCLUSION

The Court has reviewed the parties' briefing, and GRANTS Plaintiff's motion for extension of time to file a reply brief. (Dkt. # 36.) For the reasons explained herein, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 16th day of November, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 16